UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| LESTER H. SMITH, | § | |
| | § | |
| Plaintiff, | § | |
| vs. | § | CIVIL ACTION NO. 4:10-cv-00792 |
| | § | |
| JOSEPH J. McLEAN, | § | |
| | § | |
| Defendant. | § | |

**MEMORANDUM OPINION AND ORDER**

**I.     INTRODUCTION**

Pending before the Court are Lester H. Smith's, (the "plaintiff"), motion for summary judgment and memorandum in support thereof (Dkt. Nos. 17 & 18) and Joseph J. McLean's ("McLean"), response in opposition to the plaintiff's motion for summary judgment (Dkt. Nos. 20 & 21).  Also before the Court are McLean's motion to dismiss or alternative motion to stay declaratory judgment (Dkt. No. 19) and the plaintiff's response in opposition to that motion (Dkt. No. 22).  After having carefully considered the parties' submissions, the record and the applicable authorities, the Court determines that McLean's motion to dismiss should be GRANTED.  All other motions are hereby DENIED as moot.

**II.     FACTUAL BACKGROUND**

In early 2008, McLean was a member and employee of New InMarket Media, LLC ("NIMM"), a Texas limited liability corporation in the business of purchasing and reselling air time in retail shopping centers whereby its customers would advertise their businesses in captive radio commercials in retail establishments.  In mid-2008, NIMM sought an infusion of operating capital from Smith Marketing, LLC ("Smith Marketing") due to its distressed financial

condition.[1]  Upon Smith Marketing's agreement to invest in NIMM, NIMM was restructured with Smith Marketing designated as its controlling member and its name changed to Attention Shoppers, LLC ("Attention Shoppers").  Additionally, McLean was required to enter into an employment agreement with Attention Shoppers whereby he would serve as the Senior Vice President of National Sales for Attention Shoppers.  The terms of the parties' agreement was memorialized in a written agreement dated November 17, 2008 (the "Employment Agreement"). In addition to denoting the express terms and conditions of McLean's employment, including his salary, incentive compensation, bonus structure and benefits, the Employment Agreement set forth the following relevant information:

> **Non Recourse Loan**:  Upon execution of this letter agreement, a loan of $300,000 will be made from an entity controlled by Lester H. Smith to Joseph McLean ("Loan").  The loaned money will be invested by you [McLean] with LIM Partners, Ltd., in an individual account ("LIM Account"), subject to satisfaction by you of all applicable account requirements, which are subject to your advance approval.  The loan will be repaid only as provided for in this agreement and the entity that made the loan, and its successors and assigns, will not look to, or have any recourse to or seek to have any liability imposed on you or your heirs and assigns for repayment of such loan, except as provided herein.
>
> The outstanding principal amount of the Loan will accrue interest at a rate equal to the Applicable Federal Rate ("AFR").  The Loan and accrued interest may be repaid at any time without a prepayment penalty.  The outstanding loan balance and accrued interest will be credited with 9% of all booked, commissionable sales, net of cancellations, at the Company, excluding sales for which commission is paid to Larry Enzer, Scot Herd or Jennifer Scheiderer.  These credited amounts will be treated as compensation to you for all applicable tax purposes and are in addition to and not in lieu of, any other compensation due you under this agreement. At your discretion, a portion of the 9% corresponding to your marginal income tax rate (federal, state, and local) may be set aside for income tax payments, with the remainder being credited to pay interest and principal on the loan.
>
> In the event that your employment with the Company ends before the loan is fully repaid as provided herein, then within 10 days after termination of your employment (or 30 days after the appointment of a legal representative if termination is due to incapacity or death), you or your legal representative may

---

[1] The plaintiff, Lester H. Smith ("the plaintiff"), is the sole member of Smith Marketing.  (*See* Dkt. No 18, Ex. A.)

> make a written election to the entity that made the loan selecting one of the two following options: (i) pay off the remainder of the outstanding Loan balance, including all accrued interest, within 15 days after termination of your employment in which event you or your estate will be fully vested in the LIM Account upon such payment; or (ii) vest that portion of the LIM Account in an amount proportionate to the percentage of the original principal loan balance of $300,000 that has been repaid as of the termination date. Under this option (ii), you and the lending entity will notify LIM Partners, Ltd. and cause the limited partnership interest and account balance held in your name to be reallocated in the calculated percentage between you and the lending entity, subject to the transfer restrictions and procedures of the LIM Partners, Ltd. Agreement of Limited Partnership.

(*See* Dkt. No. 18, Ex. A-1.)

McLean performed his duties under the Employment Agreement until Attention Shoppers filed for Chapter 7 bankruptcy protection and ceased operations on December 30, 2009. The non-recourse loan, however, was never funded. Consequently, on January 18, 2010, McLean, by and through his then-acting attorney, wrote to the plaintiff advising him of his personal liability with regard to the non-recourse loan and demanding payment. On January 22, 2010, after receipt of McLean's letter, the plaintiff filed a petition for declaratory judgment in a Harris County state court seeking a declaration of his indebtedness to McLean under the Employment Agreement and under a theory of promissory estoppel. McLean timely removed the state-court action to this Court. Thereafter, McLean filed an action in Harris County state court asserting claims against the plaintiff for breach of the non-recourse loan agreement, fraud, promissory estoppel, and other equitable relief. The plaintiff now moves for summary judgment on his breach of contract and promissory estoppel claims. McLean moves to dismiss or stay the current action.

### III. CONTENTIONS OF THE PARTIES

#### A. The Plaintiff's Contentions

The plaintiff contends that he is not liable in his individual capacity for any claim by McLean arising out of the Employment Agreement. He also contends that he is not

individually liable to McLean for failing to fund the $300,000 non-recourse loan and consequent hedge fund investment detailed in the Employment Agreement. Consequently, he argues that he is entitled to a summary judgment that he is not indebted to McLean for breach of the Employment Agreement or under any promissory estoppel theory. With regard to McLean's motion to dismiss and/or stay, he avers that the motion should be denied because McLean's now-pending state court claims should have been filed as counterclaims in the instant declaratory judgment action. He contends that McLean seeks an eleventh-hour dismissal and/or stay only after realizing the jeopardy of having failed to raise any counterclaims or timely make a jury demand. Accordingly, the plaintiff avers that this Court should exercise its discretion and adjudicate the instant declaratory judgment action and deny McLean's motion to dismiss and/or stay.

    B.  McLean's Contentions

    McLean argues that the plaintiff's motion for summary judgment should be denied because a genuine issue of material fact exists as to whether the plaintiff breached his alleged unilateral loan agreement with McLean. Additionally, he contends that the plaintiff's declaratory judgment action should be dismissed because a more comprehensive proceeding is pending in state court which involves the same parties, the limited issues now before this Court as well as other related issues at the heart of the parties' controversy. McLean argues that the subsequent Texas state court action filed by him will fully resolve *all* of the issues between the parties rather than the limited issue of whether the plaintiff breached an obligation to him under the Employment Agreement and can be held personally liable under a promissory estoppel theory. Finally, McLean argues that the weight of authority mandates dismissal of the instant declaratory action in order to preserve his legal right to bring a more

comprehensive action before a jury in a forum of his choice. Therefore, McLean alleges that the plaintiff's declaratory judgment action should be dismissed or alternatively stayed.

## IV. STANDARD OF REVIEW

### A. The Declaratory Judgment Act

The Declaratory Judgment Act, 28 U.S.C. § 2201(a), has often been characterized as "an enabling act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.,* 515 U.S. 277, 287 (1995) (quoting *Public Serv. Comm'n of Utah v. Wycoff Co.,* 344 U.S. 237, 241 (1952)). "Since its inception, the [Act] has been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Wilton,* 515 U.S. at 286. The literal language of the Act provides that a federal court *may* declare the rights of an interested party seeking such a declaration.[2] *See* 28 U.S.C. § 2201(a) (emphasis added). Although the word *may* gives a federal court more discretion to refuse to hear a claim for declaratory relief than other kinds of claims, such discretion, however, is not without limitation. *See Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 390 (5th Cir. 2001); *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590 (5th Cir. 1994).

In determining whether to retain a declaratory judgment action, the Fifth Circuit has delineated three issues that a federal court must first consider: "(1) whether the declaratory action is justiciable; (2) whether the court has the authority to grant declaratory relief; and (3) whether to exercise its discretion to decide or dismiss the action." *Sherwin-Williams Co. v.*

---

[2] The Declaratory Judgment Act provides in pertinent part as follows:

> In a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a)

*Holmes Cnty.*, 343 F.3d 383, 387 (5th Cir. 2003) (citing *Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000)).  Once a court determines that the action is justiciable and that it has the authority to grant the declaratory relief requested, it must then consider the following nonexclusive factors in exercising its discretion to decide or dismiss a declaratory judgment action:

> (1) whether there is a pending state action in which all of the matters in controversy may be fully litigated;
> (2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant;
> (3) whether the plaintiff engaged in forum shopping in bringing the suit;
> (4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist;
> (5) whether the federal court is a convenient forum for the parties and witnesses;
> (6) whether retaining the lawsuit would serve the purposes of judicial economy; and
> (7) whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending.

*Trejo,* 39 F.3d at 590 – 91.  These factors, often referred to as the *Trejo* factors, "must be considered *on the record* before a discretionary, nonmerits dismissal of a declaratory judgment action occurs."  *Vulcan Materials Co.*, 238 F.3d at 390 (emphasis in original).  As observed by the Fifth Circuit in *Sherwin-Williams*, the *Trejo* factors address three broad concerns common to all circuits:  federalism, fairness and efficiency.  *See Sherwin-Williams*, 343 F.3d at 390 – 91 (citing *Brillhart v. Excess Ins. Co. of Am.*, 16 U.S. 491, 62 S. Ct. 1173, 86 L. Ed. 1620 (1942)).

### B. Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment against a party who fails to make a sufficient showing of the existence of an element essential to the party's case and on which that party bears the burden at trial.  *See Celotex Corp. v. Catrett*, 477

U.S. 317, 322 (1986); *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant bears the initial burden of "informing the Court of the basis of its motion" and identifying those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323; *see also Martinez v. Schlumber, Ltd.*, 338 F.3d 407, 411 (5th Cir. 2003). Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).

If the movant meets its burden, the burden then shifts to the nonmovant to "go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Stults v. Conoco, Inc.*, 76 F.3d 651, 656 (5th Cir. 1996) (citing *Tubacex, Inc. v. M/V Risan*, 45 F.3d 951, 954 (5th Cir. 1995); *Little*, 37 F.3d at 1075). "To meet this burden, the nonmovant must 'identify specific evidence in the record and articulate the 'precise manner' in which that evidence support[s] [its] claim[s].'" *Stults*, 76 F.3d at 656 (citing *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir.), *cert. denied*, 513 U.S. 871, 115 S. Ct. 195, 130 L. Ed.2d 127 (1994)). It may not satisfy its burden "with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little*, 37 F.3d at 1075 (internal quotation marks and citations omitted). Instead, it "must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Am. Eagle Airlines, Inc. v. Air Line Pilots Ass'n, Intern.*, 343 F.3d 401, 405 (5th Cir. 2003) (citing *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)).

"A fact is material only if its resolution would affect the outcome of the action, . . . and an issue is genuine only 'if the evidence is sufficient for a reasonable jury to return a verdict for

the [nonmovant].'" *Wiley v. State Farm Fire and Cas. Co.*, 585 F.3d 206, 210 (5th Cir. 2009) (internal citations omitted). When determining whether a genuine issue of material fact has been established, a reviewing court is required to construe "all facts and inferences . . . in the light most favorable to the [nonmovant]." *Boudreaux v. Swift Transp. Co., Inc*., 402 F.3d 536, 540 (5th Cir. 2005) (citing *Armstrong v. Am. Home Shield Corp.*, 333 F.3d 566, 568 (5th Cir. 2003)). Likewise, all "factual controversies [are to be resolved] in favor of the [nonmovant], but only where there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Boudreaux*, 402 F.3d at 540 (citing *Little*, 37 F.3d at 1075 (emphasis omitted)). Nonetheless, a reviewing court is not permitted to "weigh the evidence or evaluate the credibility of witnesses." *Boudreaux*, 402 F.3d at 540 (quoting *Morris*, 144 F.3d at 380). Thus, "[t]he appropriate inquiry [on summary judgment] is 'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Septimus v. Univ. of Hous.*, 399 F.3d 601, 609 (5th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 – 52 (1986)).

## V. DISCUSSION AND ANALYSIS

### A. Justiciability of the Action

As denoted above, under the test enunciated by the Fifth Circuit in *Orix Credit Alliance*, a federal court must first determine whether a declaratory action presents a justiciable issue. *Sherwin-Williams*, 343 F.3d at 387 (citing *Orix Credit Alliance*, 212 F.3d at 895). A declaratory judgment action is justiciable if "a substantial controversy of sufficient immediacy and reality exists between parties having adverse legal interests." *Venator Grp. Specialty, Inc. v. Matthew/Muniot Family, L.L.C*., 332 F.3d 835, 838 (5th Cir. 2003); *Orix Credit Alliance*, 212 F.3d at 896. Here, the plaintiff seeks a judicial declaration of his personal indebtedness to

McLean for any claims arising under the Employment Agreement and under a promissory estoppel theory. In a subsequently-filed state-court action, McLean has sued the plaintiff for breach of the non-recourse loan agreement, fraud, and promissory estoppel, seeking the recovery of actual and exemplary damages, pre-judgment and post-judgment interests, specific performance, attorneys' fees and costs. Consequently, the Court finds that a substantial and immediate controversy does exist between the parties and the plaintiff's declaratory action presents a justiciable issue.

### B. The Court's Authority to Grant Declaratory Relief

Next, this Court must determine whether it has the authority to grant the declaratory relief requested. *Sherwin-Williams*, 343 F.3d at 387. "[A] district court does not have authority to consider the merits of a declaratory judgment action when: (1) the declaratory defendant previously filed a cause of action in state court; (2) the state case involved the same issues as those in the federal court; and (3) the district court is prohibited from enjoining the state proceedings under [the Anti-Injunction Act, 28 U.S.C.A. §] 2283." *Id.* at 388 n. 1. (citing *Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.,* 996 F.2d 774, 776 (5th Cir. 1993)). "The absence of any of the three factors defeats mandatory abstention . . . ." *Sealed v. Sealed*, No. 94-30148, 1994 WL 487245, *2 (5th Cir. Aug. 18, 1994) (citing *Torch, Inc. v. LeBlanc*, 947 F.2d 193, 194 (5th Cir. 1991)). Because the plaintiff in the case *sub judice* filed the instant declaratory action in federal court before McLean, the declaratory defendant, ever sought relief in state court, mandatory abstention appears inapplicable here and this Court has authority to grant declaratory relief.

### C. The Court's Exercise of Discretion; Analysis of the *Trejo* Factors

As a third and final step, the Court must consider whether to exercise its discretion to decide or dismiss this action. *Sherwin-Williams*, 343 F.3d at 387. The Court is of the opinion that an evaluation of the *Trejo* factors weighs in favor of a dismissal of the plaintiff's declaratory action.

#### 1. Pending State Court Action

The first *Trejo* factor addresses federalism and asks "whether there is a pending state action in which all of the matters in controversy may be fully litigated. *Trejo*, 39 F.3d at 590. McLean argues that the pending Texas state court action will fully resolve *all* the issues between the parties rather than the limited issues of whether the plaintiff is liable for breach of the Employment Agreement and/or whether McLean can recover against him for failing to fund the non-recourse loan under a promissory estoppel theory . This Court agrees. Given that federal jurisdiction in this case is premised on diversity of citizenship, all issues at the heart of the parties' controversy are state law issues and are well-suited for resolution by a state court. Accordingly, this controversy can be better settled in the proceeding pending in state court. *See Sphere Drake Ins. Co. v. Tiger Tennis Camp*, 839 F. Supp. 403, 405 (M.D. La. 1993) (reasoning that where federal jurisdiction is based on diversity, all issues are "particularly suited to resolution by the state courts.") Thus, this factor weighs in favor of dismissal of the instant declaratory judgment action.

#### 2. Anticipatory Filing, Forum Shopping and Fairness

The second and third *Trejo* factors relate to fairness and ask "whether the declaratory plaintiff filed suit in anticipation of a lawsuit filed by the defendant" and "whether the plaintiff engaged in forum shopping." *Trejo*, 39 F.3d at 591. In this case, McLean claims that the

plaintiff filed the instant declaratory judgment action in a race to the courthouse in anticipation of his action for damages. The plaintiff, in opposition, argues that McLean's state-court action is based on exactly the same matters in controversy now before this Court and that the claims alleged by him in his state-court action should have been filed as counterclaims in the instant action rather than as a subsequent separate suit. Consequently, he contends that the "exceptional circumstances" test enunciated in *Colorado River* and *Moses Cone* require this Court to retain jurisdiction over the instant declaratory action. This Court disagrees and finds the *Colorado River/Moses Cone* "exceptional circumstances" test inapplicable here. *See Sherwin-Williams*, 343 F.3d at 389 - 90.

Indeed, "[m]erely filing a declaratory judgment action in a federal court with jurisdiction to hear it, in anticipation of state court litigation, is not in itself improper anticipatory litigation or otherwise abusive 'forum shopping.'" *Sherwin-Williams*, 343 F.3d at 391. However, where declaratory relief is sought in an effort to avoid the state court system and to otherwise set precedence in time and venue, improper anticipatory litigation or otherwise abusive 'forum shopping' will be found. *See Id.* at 397 – 98 (citing *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 (5th Cir.1983)); *see also Rowan Companies, Inc. v. Blanton*, 764 F. Supp. 1090, 1092 - 93 (E.D. La. 1991).

In this case, the plaintiff received a demand letter from McLean's then-acting attorney advising him of McLean's retention of a lawyer in connection with his claims associated with the plaintiff's failure to fund the non-recourse loan detailed in the parties' Employment Agreement. Four days later, on January 22, 2010, the plaintiff filed the instant declaratory judgment action. That same day, the plaintiff, by and through his attorney, responded to McLean's demand letter setting forth his defenses and/or objections to McLean's claims, advising of his pending

declaratory action, and proposing an offer of settlement. This sequence of events, while not sufficient to establish forum shopping, is enough to suggest that, by filing this declaratory judgment action in anticipation of any claim or action by McLean, the plaintiff engaged in procedural fencing. This finding weighs in favor of dismissal of the declaratory judgment action.

The fourth *Trejo* factor also addresses fairness. In resolving this factor, a court must determine whether inequities exist in allowing the declaratory judgment to be decided in federal court. *Trejo*, 39 F.3d at 591. This Court is of the opinion that allowing the plaintiff to litigate his limited issues in federal court is inequitable, especially in light of the fact that the plaintiff's issues as well as McLean's questions concerning the plaintiff's liability can be fully resolved in the pending state-court proceeding. Furthermore, deciding this case would do little to clarify the applicable legal issues or afford relief from uncertainty since many of McLean's claims are not before this Court. This factor weighs in favor of dismissal of the declaratory judgment action.

### 3. Convenience of the Forum

The fifth *Trejo* factor concerns efficiency and asks "whether the federal court is a convenient forum for the parties and witnesses." *Trejo,* 39 F.3d at 591. In this case, the plaintiff is an individual residing in Houston, Harris County, Texas. McLean, on the other hand, is a resident of Springfield, Pennsylvania. Nevertheless, McLean has filed a related state court action in Harris County, Texas. Because both forums appear to be equally convenient to the parties, the Court finds this factor to be neutral, favoring neither forum.

### 4. Judicial Economy

The sixth *Trejo* factor, also an efficiency concern, asks "whether retaining the lawsuit would serve the purposes of judicial economy." *Id.* This factor weighs heavily in favor of dismissal of the instant declaratory judgment action because to allow the instant action to

proceed would result in piecemeal litigation, as the issue presented for decision in this action will definitely be addressed and resolved in McLean's lawsuit now pending in the Texas state court. To have both this Court and the Texas state court proceed towards judgment runs the risk of inconsistent rulings and compels an unnecessary duplication of judicial resources. *See PPG Indus., Inc. v. Cont'l Oil Co.*, 478 F.2d 674, 680 (5th Cir. 1973). Certainly, the public interest demands that a federal court's time be more judiciously spent. To quote Justice Frankfurter, "[I]t would be uneconomical as well as vexatious for a federal court to proceed in a declaratory judgment suit" when the entire controversy is already being litigated in a state court that is capable of resolving the dispute. *Brillhart*, 316 U.S. at 495. "Gratuitous interference with the orderly and comprehensive disposition of a state court litigation should be avoided." *Id.*

### 5. Construction of State Judicial Decree

The seventh *Trejo* factor, which also addresses federalism, asks "whether the federal court is being called on to construe a state judicial decree involving the same parties and entered by the court before whom the parallel state suit between the same parties is pending." *Trejo*, 39 F.3d at 591. If so, this factor clearly weighs in favor of dismissing the action for federalism concerns. *Sherwin-Williams*, 343 F.3d at 392. Because neither party has asked the Court to interpret a state judicial decree, this factor is neutral.

## VI. CONCLUSION

All aspects of the *Trejo* test - federalism, fairness, and efficiency - weigh against this Court exercising jurisdiction over the plaintiff's declaratory judgment action. Therefore, the Court declines to exercise jurisdiction over this case and hereby dismisses it.

It is so **ORDERED**.

SIGNED at Houston, Texas this 14th day of July, 2011.

_____
Kenneth M. Hoyt
United States District Judge